UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:05-CV-00087-R

GENERAL STEEL CONTRACTORS, INC.                                    PLAINTIFF

v.

PEGGY ORTEZ and
HUGHES HEAVY HAUL & CRANE SERVICE, LLC                    DEFENDANTS

**OPINION**

Defendants Peggy Ortez ("Ortez") and Hughes Heavy Haul & Crane Service ("Heavy

Haul") filed a Motion for Summary Judgment (Docket # 21).  Plaintiff responded (Docket # 28),

and Defendants replied to that response (Docket # 29).  The matter is now ripe for adjudication.

Defendants' Motion for Summary Judgment is now GRANTED.

**BACKGROUND**

This matter arises from Heavy Haul's use of the toll-free telephone line, 1-800-998-2344,

provided by AT&T.  Prior to February 1, 2004, the line connected to Plaintiff's Henderson,

Kentucky, office.  When the Henderson office closed, the number was to be transferred to the

Plaintiff's main office in Hopkinsville, Kentucky.  On February 1, 2004, a document was

executed purporting to direct AT&T to transfer the line's use to Heavy Haul.  The document was

ostensibly signed by Jamie Stanley on behalf of Plaintiff.  Afterward, the line was transferred to

Heavy Haul.

According to Plaintiff, no representative approved or was aware of the transfer of service.

Plaintiff posits that Ortez, then an owner of Heavy Haul, forged Stanley's signature on the document so that Heavy Haul could receive calls and steal customers from Plaintiff.  In support of this contention, Plaintiff notes that, when asked about the document, Ortez consistently refuses to answer questions in her deposition, citing her Fifth Amendment privilege against self-incrimination.  Ortez also wrote and sent a letter to Plaintiff expressing her regret and apologizing for any harm to Plaintiff from Heavy Haul's use of the telephone line.

After the line was transferred, Ortez took full ownership of Heavy Haul and eventually sold her interest to Mr. John Hughes.  The Plaintiff discusses testimony of a former employee of Plaintiff's suggesting that Mr. Hughes had previously tried in vain to acquire the use of the telephone line for Heavy Haul's benefit.  According to Plaintiff's theory of the case, this shows that Heavy Haul, unable to legally acquire Plaintiff's phone line, sought to transfer it illegally.

In April, 2004, Plaintiff discovered Heavy Haul's use of the line during a routine check of phone lines.  By May, 2004, Plaintiff recovered use of the line.  Plaintiff alleges that it was damaged by Heavy Haul's use of the line between February, 2004, and May, 2004, because Heavy Haul spoke to and took business from customers intending to reach Plaintiff.  Specifically, Plaintiff notes testimony of an employee that a customer contacted them after reaching Heavy Haul by calling the line and securing Heavy Haul's services.  Plaintiff also has acquired phone records indicating that calls were made to the line while it was directed to Heavy Haul, although records also show that the line received no calls between the date Plaintiff's Henderson office closed and the transfer to Heavy Haul.  Furthermore, Heavy Haul admits to securing two separate jobs from the use of the line, though Heavy Haul indicates that its total profit from those jobs was only $1,785.  During the period between February, 2004, and May, 2004, Plaintiff admits

that Heavy Haul paid for the telephone service.

Plaintiff sues Defendants for conversion of Plaintiff's rights to use the line. Plaintiff also brings claims against the Defendants under 47 U.S.C. § 605(a), a statute outlawing the unauthorized publication or use of wire or radio communications and allowing for civil enforcement. Defendants claim that summary judgment against Plaintiff is appropriate because Plaintiff has failed to establish a *prima facie* case for conversion and because 47 U.S.C. § 605(a) does not provide for a cause of action against Defendants.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). "The plaintiff must present more than a mere scintilla of evidence in support of her

position; the plaintiff must present 'evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment. "The mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996) (citing *Anderson*, 477 U.S. at 247-49).

Summary judgment is also appropriate where a plaintiff presents issues of fact relevant to its claims, but fails to allege support for each and every element necessary for a *prima facie* case. *Celotex*, 477 U.S. at 322-23.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.
> *Id.* at 322.

Therefore, the Court must examine whether Plaintiff has sufficiently alleged each element necessary to uphold a claim of conversion.

## ANALYSIS

### I.     Conversion *Prima Facie* Case

Defendant argues that the Plaintiff's claims of conversion should be decided through summary judgment because the Plaintiff has failed to allege and support all elements of a *prima*

*facie* case.  Under Kentucky law,[1] a plaintiff claiming conversion must show that:

> (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's right to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.
> *Meade v. Richardson Fuel, Inc.*, 166 S.W.3d 55, 58 (Ky. App. 2005) (quoting *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005)).  *See also State Auto. Mut. Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626, 627 (Ky. App. 1990).

The Court finds that the Plaintiff has shown an issue of fact as to whether it had the right to use the line at the time.[2]  The Plaintiff certainly once had the contractual right to use the line, and a jury might find that the Plaintiff never voluntarily gave up that contractual right.  Therefore, Plaintiff has sufficiently alleged that had a right to possess the line at the time of conversion.  The document ostensibly signed by Stanley and sent to the phone company also seems to indicate that AT&T, the line provider, believed that Plaintiff had legal rights to possess the line at the time of the transfer.  Plaintiff has also sufficiently alleged that the Defendants completely deprived

---

[1]Plaintiff cites to two federal cases generally stating Kentucky common law of conversion.  *Kimberly & European Diamonds, Inc. v. Burbank*, 684 F.3d 363, 365-66 (6th Cir. 1982); *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1027 (6th Cir. 1979).  Both cases precede *Meade* and other current Kentucky conversion law by at least two decades.  Neither case focuses significantly on the interpretation of conversion law.  Since this Court is bound by the current Kentucky interpretation of conversion law, we use the *Meade* standard.

[2]Federal Circuit Courts of Appeals have held that a person may not have a property right in a particular telephone number; however, the cases suggest that a person might hold a legal, contractual right to continued service under that number.  *In re Best Re-Manufacturing Co.*, 453 F.2d 848, 849-50 (9th Cir. 1971); *Slenderella Sys. of Berkeley, Inc. v. Pacific Tel. & Tel. Co.*, 286 F.2d 488 (2nd Cir. 1961).

Plaintiff of any use of the line for an expanse of time and did so intentionally.  The testimony of

Plaintiff's employees and possession of a letter from Ortez provide adequate support to create a

genuine issue of fact on that matter.

The Plaintiff must also support claims that it suffered damage from loss of use of the line.

"The traditional measure of damages for the conversion... of personal property is the fair market

value of the property at the time and place of the loss..." *Amlung v. Bankers Bond Co.*, 411

S.W.2d 689, 693 (Ky. 1967) (citing *Sanders v. Vance*, 23 Ky. (7 T.B.Mon.) 209, 213 (1898);

*Lane v. Rowland*, 175 S.W.2d 1000, 1002 (Ky. 1943)).  *See also State Auto*, 792 S.W.2d at 627

("The measure of damages in conversion is the value of the property at the time of conversion.").

If the Defendants are found to have converted the property, the Plaintiff no longer retains title,

possession, or use of the line, but takes damages in exchange.  *Amlung*, 411 S.W.2d at 693.

Defendants argue that, since Plaintiff accepted no calls on the line between the closing of the

Henderson office and the alleged conversion, the continued use of the line had no business or

monetary value at the time of transfer.  If the contract to use the line indeed had no fair market

value, Plaintiff has not alleged any damages.  However, Plaintiff presents testimony that its

customers called the line seeking services from Plaintiff, which were then provided by Heavy

Haul.  Plaintiff also presents testimony that Heavy Haul had previously sought to acquire the

contractual right to use the line from Plaintiff, but Plaintiff refused.  The Court finds that the

business value and Heavy Haul's alleged request for the line are enough to sufficiently allege that

the contractual right to Plaintiff's continued use of the line might have some market value which

could constitute damages.

The Plaintiff, however, has neither alleged nor proven any facts which might support

elements (1) and (5) of conversion as set out in *Meade*. In particular, Plaintiff presented evidence

to the Court that Heavy Haul received bills for the use of the line between February, 2004, and

April, 2004. Thus, Plaintiff was not paying for and had no legal right to use the line at the time.

Also, Plaintiff does not contest that it has regained use of the line. In April, 2004, Plaintiff

requested return of use of the line for the first time since its transfer to Heavy Haul. Plaintiff

never alleges that Defendants refused to transfer the line back to Plaintiff. In fact, the line was

transferred back to Plaintiff shortly after Plaintiff contacted Heavy Haul about its use of the line.

Since Plaintiff has neither alleged nor proven two elements necessary for conversion, summary

judgment is appropriate on Plaintiff's conversion claims.


## II.     Applicability of 47 U.S.C. 605(a)

Plaintiff claims that Defendants violated the first sentence of 47 U.S.C. § 605(a). Since

Plaintiff does not specifically allege violation of the other parts of 47 U.S.C. § 605(a), the Court

need not consider them in this Opinion.[3] *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d

900, 901 (6th Cir. 2001) (holding that each sentence of § 605(a) outlines a separate prohibition

which must be separately alleged). Case law and legislative intent indicates that the first

sentence of § 605(a) "is designed to regulate the conduct of communications personnel," not

business competitors outside the communications field. S.Rep. No. 1097, 90th Cong., 2d Sess.,

*reprinted in* 1968 U.S.C.C.A.N. 2112, 2197. *See also U.S. v. Norris*, 88 F.3d 462, 465 (7th Cir.

---

[3]The Court also need not consider the other parts of the statute because they specifically refer to radio communications. The parties agree that the telephonic communications at issue in this case were transmitted by wire. *See also U.S. v. Murray*, 492 F.2d 178, 194 (9th Cir. 1973) (indicating that the telephonic communications are not radio communications).

1996). "[B]y its plain language, the first sentence applies only to the unauthorized divulgence or publication of communications, as compared to the plain language of interception and reception found in the following three sentences." *Gen. Instrument Corp. v. Nu-Tek Elecs. & Mfg., Inc.*, No. CIV.A. 93-CV-3854, 1996 WL 402511, at *4 (E.D. Pa. Apr. 12, 1996). "[T]he legislative history of this section demonstrates that the first sentence of section 605(a) applies to legitimate communications personnel, as opposed to those engaged in the unauthorized interception of wire or radio communications." *Id. See also Nat'l Satellite*, 253 F.3d at 913 ("In particular, the prohibition in the first sentence of § 605(a) does not involve the interception of a communication at all. It prohibits intermediaries who are *authorized* to receive a communication by wire or radio from divulging the contents of the transmission to any person other than the addressee intended by the sender.")(emphasis in original); *Joe Hand Promotions, Inc. v. Rennard St. Enters., Inc.*, 954 F.Supp. 1046, 1051 (E.D. Pa. 1997) ("The first sentence of § 605(a) prohibits persons involved in the communications industry from divulging or publishing wire or radio communications."); *Norris*, 88 F.3d at 465 (holding that the first sentence of § 605(a) prohibits "the unauthorized divulging or publishing of wire or radio communications by the operators responsible for receiving such communications."). Therefore, "only legitimate communications personnel may violate the prohibitions of the first sentence" of § 605(a). *Joe Hand*, 954 F.Supp. at 1052.[4] Since Plaintiff admits that neither Heavy Haul nor Ortez qualify as legitimate communications personnel, the Plaintiff is unable as a matter of law to establish a violation of the

---

[4]Plaintiff does not substantively dispute this interpretation of the statute. In response to Defendants' arguments, Plaintiff cites the statutory definitions which were interpreted by the above cases and a Sixth Circuit case holding a cable company, a "legitimate communications provider," liable under the statute. *Nat'l Satellite*, 253 F.3d 900.

first sentence of 47 U.S.C. § 605(a).  Summary judgment is appropriate as to Plaintiff's statutory

claims as well as its common law claims.

## CONCLUSION

The Court hereby GRANTS Defendants' Motion for Summary Judgment.  An appropriate

Order shall issue.